**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DATQUNN SAWYER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 14-cv-7665 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

The petitioner, Datqunn Sawyer, moves this Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2255. After holding an evidentiary hearing, the Court denies that petition.

**Background**

On November 21, 2011, a federal jury convicted Sawyer of conspiracy to engage in sex trafficking of minors and sex trafficking by force in violation of 18 U.S.C. § 1594(c), multiple counts of sex trafficking of minors and sex trafficking by force in violation of 18 U.S.C. § 1591(a), sex trafficking by force of an adult victim in violation of 18 U.S.C. § 1591(a), and attempted sex trafficking of a minor victim in violation of 18 U.S.C. § 1594(c). Sawyer was sentenced to fifty years in prison and is currently incarcerated in the United States Penitentiary in Tucson, Arizona.

After his conviction was upheld on appeal, Sawyer filed a habeas corpus petition under 28 U.S.C. § 2255 asserting eight individual claims for relief. As is pertinent here, one of those claims was the constitutionally ineffective assistance of trial counsel based on trial counsel's alleged advice not to accept the government's offer of a 15-year sentence in exchange for a guilty plea. The district court denied this claim as unsubstantiated without holding an evidentiary hearing. The Seventh

Circuit subsequently vacated that decision and remanded the case to this Court so that an evidentiary hearing could be held on Sawyer's ineffective assistance of trial counsel claim.

Counsel was appointed on Sawyer's behalf, and this Court subsequently held an evidentiary hearing at which Sawyer, his mother Carolyn Sawyer, his grandmother Della McMiller, his former lawyer David Peilet, and Assistant U.S. Attorney Marc Krickbaum testified. The Court also heard closing arguments from both counsel and Sawyer directly, based on his stated desire to address the Court.

**Legal Standard**

A prisoner in federal custody can seek his release through a section 2255 petition by arguing that his sentence was imposed in violation of the Constitution or the laws of the United States. 28 U.S.C. § 2255(a). In order to prevail, the petitioner must show by a preponderance of the evidence that he has been deprived of some constitutional right. *Hearn v. United States,* 194 F.2d 647, 649 (7th Cir. 1952).

Under the Sixth Amendment, criminal defendants are entitled to the effective assistance of competent counsel during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Claims that counsel provided ineffective assistance by advising a defendant to reject a plea offer are reviewed using the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that test, a petitioner must show first that his counsel's performance fell below an objective standard of reasonableness, and, second, that the outcome of the plea process would have been different with competent advice. *Lafler*, 566 U.S. at 163. In order to establish that the outcome of the plea process would have been different with competent advice, the petitioner must demonstrate that there is a reasonable probability that the plea offer would have been presented to the court, that the court

would have accepted it, and that the conviction or sentence would have consequently been less severe than the judgment imposed. *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013).

**Discussion**

Here, the main factual dispute turns not on whether counsel was ineffective in advising Sawyer to reject the plea agreement as offered, but instead on whether a plea agreement was offered in the first instance. Sawyer claims that his lawyer informed him that the government was offering a plea agreement with an agreed fifteen-year sentence, but that his lawyer repeatedly advised him not to take that offer in light of his odds at trial.

Sawyer's trial lawyer David Peilet credibly testified that no plea agreement was ever offered. Peilet explained that, at an initial conference with the government, Assistant U.S. Attorney Marc Krickbaum inquired as to whether there was any possibility of an alternative resolution in the case. Peilet visited Sawyer at the Kankakee County Jail, where he asked if Sawyer was interested in exploring the possibility of a plea. Sawyer, according to Peilet, answered that he had no interest in a plea because he was not guilty, and Peilet subsequently informed the government that a plea was not a possibility. Peilet testified that, following that conversation, he never again discussed the possibility of entering into a plea agreement with Sawyer. Peilet also testified that he did not receive any plea offers or draft plea agreements from the government. Peilet further remarked that, even if a plea had been offered, he did not believe that Sawyer would have accepted it because Sawyer was consistent in asserting his innocence throughout the criminal proceeding.

This testimony is entirely consistent with that of the lead Assistant U.S. Attorney on the case, Marc Krickbaum. Krickbaum testified that early in the trial preparation process he asked Peilet if a plea was possible. He explained that this proposal was made, in part, because he believed that the assigned judge would give a harsher sentence if he heard the facts at trial, and that a plea would therefore help Sawyer to avoid prejudicing his case at sentencing. Krickbaum reported that Peilet

rejected this inquiry and informed him that Sawyer was unwilling to consider a plea in light of the fifteen-year mandatory-minimum sentence.

Krickbaum also testified, at length, about why Sawyer would never have been offered a plea agreement with a fifteen-year term of imprisonment. Sawyer, along with two codefendants, was charged in a ten-count indictment with the sex trafficking of multiple minors through the use of force or fraud. The government's evidence showed that Sawyer was the ring-leader of the sex-trafficking operation and that he had physically and emotionally abused the minor victims. In light of his crimes and criminal history, Sawyer's sentencing range according to the United States Sentencing Commission Guidelines was a life sentence. Krickbaum explained that any variance below that guidelines minimum, or any plea that imposed a binding sentence on the Court, would have required approval from the deputy chief, the section chief, and the criminal chief of the U.S. Attorney's office. Krickbaum explained that such approvals were never sought or received. He also explained that, although Sawyer's codefendants got plea deals with sentences below 15-years, they were also significantly less culpable than Sawyer, the ring-leader of the sex-trafficking operation at issue. Finally, Krickbaum explained that the government would never have considered offering a fifteen-year sentence for Sawyer in light of the recommended guidelines sentence of life in prison and the public danger posed by the release of a "dangerous" and "violent" "predator" who "targeted" and "groomed" teenage girls. As Krickbaum succinctly but credibly put it, although he was willing to recommend that Sawyer receive less than a lifetime sentence, he wanted Sawyer to remain in prison until he was an old man.

In comparison to these plausible accounts, Sawyer testified as to a very different version of events. Sawyer claims that Peilet was enthusiastic about his prospects of success and repeatedly encouraged him not to plead guilty. Sawyer specifically asserted that, when Peilet visited him in the Kankakee Jail prior to trial, Peilet told him that the government was offering a fifteen-year plea deal.

Sawyer claims that he asked whether he should take this deal in light of the "trial tax," but that Peilet told him that he wouldn't receive a sentence of more than fifteen years if he went to trial. Sawyer further testified that he asked Peilet whether he should plead guilty if his codefendants would be testifying against him. Sawyer explained that Peilet told him that his codefendants' pleas would not impact the strength of his case. Sawyer admitted that he never saw any plea documents from the government or other evidence of an official plea deal. Sawyer's mother and grandmother gave consuming testimony that they thought or assumed that Sawyer had been given the opportunity to plead guilty in exchange for a fifteen-year sentence, although neither knew of a specific offer or agreement giving rise to that possibility.

It is Sawyer's burden, as the petitioner, to establish by a preponderance of the evidence that a plea deal was offered to him. Sawyer's testimony and evidence, however, do not establish the existence of such a deal. To the contrary, the propensity of the evidence, as established by both Peilet's testimony and the government's highly credible explanation of why it would never have considered or agreed to a plea deal of fifteen years, establishes that a plea deal guaranteeing a fifteen-year sentence was not offered in this case. Sawyer's testimony, although consistent, does not effectively call the veracity of these accounts into question. Sawyer's mother and grandmother provide only circumstantial support to Sawyer's version of events, and Sawyer has identified no evidence outside of his testimony and that of his relatives to corroborate his account. Sawyer, moreover, has failed to offer any explanation as to why the government would pursue a plea deal with a sentence drastically lower than the minimum sentencing guideline range of life in prison, especially given the nature of the alleged crimes. After considering all of the evidence and Sawyer's impassioned arguments, the Court concludes that Sawyer has not established that a plea deal was offered to him by a preponderance of the evidence, and therefore concludes that he has failed to establish that trial counsel was constitutionally ineffective in advising him not to accept that plea.

**Conclusion**

For the foregoing reasons, Sawyer's petition for a writ of habeas corpus is denied.

Date: 1/9/2019

Entered: ______________________
SHARON JOHNSON COLEMAN
United States District Court Judge